# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Criminal No. 3:15-CR-286** |
| **v.** | : | **(JUDGE MANNION)[1]** |
| **SAMUEL LOMBARDO,** | : | |
| **Defendant** | : | |

## <u>MEMORANDUM</u>

Pending before the court is Defendant Samuel Lombardo's motion to vacate filed pursuant to 28 U.S.C. §2255. (Doc. 132). Defendant seeks to have his conviction of a firearms charge vacated based upon ineffectiveness of counsel. For the reasons that follow, the motion will be **DENIED**.

## I. BACKGROUND

By way of relevant background, on December 8, 2015, a grand jury returned a four-count indictment against Defendant Samuel Lombardo. (Doc. 1 at 1). Counts 1 and 2 of the indictment charged defendant with violating 21 U.S.C. §841(a)(1) for knowingly and intentionally distributing heroin on August 12, 2015 and on August 13, 2015 in Luzerne County. (Id. at 2). Count 3 charged defendant

---

[1] This case was reassigned to the undersigned following the recent passing of the Honorable James M. Munley.

with violating 21 U.S.C. §841(a)(1) for knowingly and intentionally possessing with the intent to distribute heroin on August 12, 2015 and August 13, 2015 in Luzerne County. (Id.) Finally, Count 4 charged defendant with knowingly and intentionally carrying a firearm during and in relation to a drug trafficking crime on August 13, 2015 in Luzerne County in violation of 18 U.S.C. §924(c). (Id. at 3). Count 4 of the indictment described the weapon possessed by defendant as a .25 caliber Armi Tanfolio semi-automatic handgun with serial number MI93340. (Id.)

On April 23 and April 24, 2018, the court held a trial where the government presented four witnesses, and the defendant presented four witnesses. Additionally, the defendant testified. After deliberation, the jury convicted the defendant on all four counts. (Doc. 83, Jury Verdict). The defendant then filed a motion for judgment of acquittal on Count Four, the firearms charge. The court denied the motion on August 27, 2018. (Doc. 107). On September 29, 2018, the court sentenced defendant to a term of imprisonment of seventy-two (72) months including sixty (60) months mandatory minimum incarceration on the firearms charge. (Doc. 114, Judgment).

On August 13, 2019, defendant filed the instant *pro se* motion to vacate under 28 U.S.C. §2255. (Doc. 132). We directed the defendant to file a notice of election pursuant to United States v. Miller, 197 F.3d 644, 652 (3d Cir. 1999). (Doc. 133). On October 2, 2019, defendant filed a notice of election indicating that he

sought to proceed with the motion as filed. (Doc. 134). The government has responded to the motion and the defendant has filed a reply to the government's response. The motion is thus ripe for disposition.

## II. Legal standard

A prisoner in custody under the sentence of a federal court may, within one year from when the judgment becomes final, move the sentencing court to "vacate, set aside, or correct" a sentence "imposed in violation of the Constitution or laws of the United States." 28 U.S.C. §2255(a). A section 2255 motion may attack a federal prisoner's sentence on any of the following grounds: "[1] that the judgment was rendered without jurisdiction, or [2] that the sentence imposed was not authorized by law or otherwise open to collateral attack, or [3] that there has been such a denial or infringement of the Constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack. . . ." 28 U.S.C. §2255(b).

Section 2255 does not afford a remedy for all errors that may have been made at trial or sentencing. United States v. Addonizio, 442 U.S. 178, 186 (1979). Rather, section 2255 permits relief for an error of law or fact constituting a "fundamental defect which inherently results in a complete miscarriage of justice." United States v. Eakman, 378 F.3d 294, 298 (3d Cir. 2004) (citing Addonizio, 442 U.S. at 185). If the court determines that the sentence was not authorized by law, was unconstitutional, or otherwise open to collateral attack, it must either vacate

3

the judgment, resentence the prisoner, or grant the prisoner a new trial as appropriate. See 28 U.S.C. §2255(b). Conversely, a court may dismiss a section 2255 motion where the record shows conclusively that the movant is not entitled to relief. United States v. Nahodil, 36 F.3d 323, 326 (3d Cir. 1994).

### III. Discussion

Defendant raises one issue in his motion. He claims that Count 4, the firearms charge, requires the jury to find that the defendant had criminal intent; specifically, that the prosecution had to prove beyond a reasonable doubt that he had criminal intent with regard to the firearm. (Doc. 132, Section 2255 Motion ¶12). Defendant claims that his counsel performed ineffectively by not informing the jury of the prosecution's burden to prove criminal intent and that such failure on his counsel's behalf could have had a substantial impact on the jury's verdict. (Id.) After a careful review, we find no merit to the defendant's argument.

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to counsel. The United States Supreme Court has found that " the right to counsel is the right to the effective assistance of counsel. " Strickland v. Washington, 466 U.S. 668, 686 (1984) (quoting McMann v. Richardson, 397 U.S. 759, 771, n.14 (1970)). Counsel is ineffective when "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686.

4

Thus, under Strickland, to prove that his counsel was deficient at trial or sentencing, the defendant must convince the court of two factors, deficient performance by counsel and prejudice from that deficient performance. "First, the defendant must show that counsel's performance was deficient." Id. at 687. Satisfying the first factor, deficient performance, requires a "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. Substandard lawyering is not enough to obtain relief. In assessing an attorney's performance, courts apply a highly deferential level of scrutiny. See Marshall v. Cathel, 428 F.3d 452, 462 (3d Cir. 2005) (quoting Strickland, 466 U.S. at 689). This deference is afforded because "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690.

To satisfy the second factor of the Strickland test, "the defendant must show that the deficient performance prejudiced the defense" by demonstrating that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. In other words, "the party claiming ineffective assistance 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Campbell v. Burris, 515 F.3d 172, 184 (3d Cir. 2008) (quoting Strickland, 466 U.S.

at 694). "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceedings . . . not every error that conceivably could have influenced the outcome undermines the reliability of the proceeding." Id. (quoting Strickland, 466 U.S. at 693). Additionally, counsel cannot be held to be ineffective for failing to pursue a meritless issue. Werts v. Vaughan, 228 F.3d 178, 203 (3d Cir. 2000).

Relief under section 2255 for ineffectiveness of counsel is only available to defendants who make adequate showings with respect to both factors of the Strickland test. See Strickland, 466 U.S. at 686. Accordingly, "to merit a hearing, a claim for ineffective assistance of counsel, accepting the veracity of its allegations, must satisfy both prongs of the Strickland test, deficient counsel and prejudice to the defense." Campbell, 515 F.3d at 183 (quoting Wells v. Petsock, 941 F.2d 253, 559-60 (3d Cir. 1991)).

Here, the defendant fails to establish that defendant's counsel performed deficiently, or that even if counsel had performed ineffectively, that defendant was prejudiced. We will discuss deficient performance and prejudice separately.

## A. Deficient performance

To prevail on an ineffectiveness of counsel claim under section 2255, a defendant must first establish that his counsel performed deficiently. Strickland, 466 U.S. at 687. Here, defendant alleges deficient performance with respect to

6

Count 4, which charged him with knowingly and intentionally carrying a firearm during and in relation to a drug trafficking crime on August 13, 2015 in Luzerne County in violation of 18 U.S.C. §924(c). Defendant claims that his counsel performed ineffectively by not informing the jury of the prosecution's burden to prove he possessed criminal intent with regard to the firearm. A review of the record, however, reveals that defense counsel kept the issue of intent with regard to the firearm front and center throughout the trial. For a full exploration of this issue, a more detailed recitation of the facts is warranted.

This case arose from an investigation conducted by the Kingston Municipal Police Department (hereinafter "KPD") into drug trafficking in the Kingston, Pennsylvania area. A confidential informant, (Hereinafter CI) informed the KPD detectives that the defendant was engaging in drug trafficking, specifically the selling of heroin. (Doc. 96, Notes of Trial Testimony Apr. 23, 2018 (hereinafter "N.T. Apr. 23, 2018") at 25-26). The CI further advised the detectives that the defendant dealt heroin to several dancers who worked with the CI at a local gentlemen's club. (Id. at 28). According to the CI, the defendant frequently carried heroin in his vehicle in addition to a handgun. (Id.) The CI, who was facing charges of drug possession and possession of paraphernalia, agreed to work with the KPD detectives to conduct two controlled purchases of heroin from the defendant. (Id. at 26).

The controlled purchases, which took place in the defendant's vehicle, occurred on August 12 and 13, 2015. (Id. at 26-49). KPD detectives followed the defendant's vehicle after he left the second controlled buy and conducted a felony stop shortly thereafter. (Id. at 52-53). KPD detectives removed the defendant from his vehicle at gunpoint and placed him in handcuffs. (Id. at 53). Sergeant McTague, another KPD detective involved in the investigation, immediately searched the defendant's vehicle and recovered a firearm in the driver's side door compartment. (Id. at 53-54). The firearm was positioned in a small partially opened black pouch. (Id. at 93). The gun was determined to be loaded, with one round chambered. (Id. at 94). Sergeant McTague also recovered seven bags of heroin from the vehicle, one empty bag, a wallet, a pair of brass knuckles, and the $40 of pre-recorded money given to the defendant by the CI. (Id. at 59-60).

During the trial, defense counsel addressed Count 4 in the opening statement, in the presentation of evidence and during closing arguments to such an extent that the intent with regard to the gun became the main issue of the case. Defense counsel conceded the drug charges in the opening statements. (Doc. 139, Transcript of Opening Statements, Apr. 23, 2018 (hereinafter "Tr. Opening" at 10). Counsel stated: "This trial is about the gun charge really, that's what it's about." (Id.) Defense counsel attacked the intent element in the opening statement by indicating defendant obtained the firearm lawfully, needed it for protection due to

his employment and that he felt no threat from his drug customers. (Id. at 10-14).

For example, counsel stated: "Now, I just told you there were distributions of drugs in this case, but the gun has to exist in relation to that distribution of drugs that existed. It has to. It can't simply be there. It can't simply be there for other purposes. It must be related to the drug-trafficking offense. We're going to submit to you that was not the case here. That was not the case here." (Id. at 11).

During the prosecution's case, defense counsel cross-examined witnesses on the defendant's use of the firearm. (Doc. 96, N.T. Apr. 23, 2018 at 76-77; Doc. 106, Notes of Trial Testimony Apr. 24, 2018, (hereinafter "N.T. Apr. 24, 2018") at 25-26, 29, 117). For example, the following exchange occurred between the Detective Edward Palka, the investigating officer, and defense counsel:

> Q. [Defense Counsel] Now throughout the course of this investigation, you agree with me that you have no information that [defendant] ever pointed a gun at anyone during the course of a drug transaction?
> A. [Detective Palka] No.
> Q. That he did not brandish the gun during the course of a drug transaction? . . .
> Q. He told you in his statement that the only way those people could know that he had a gun was because they were going through his car - - those people being strippers - - when he had left looking for money, looking to rob him, correct?
> A. That's what he claimed.

(Doc. 96, N.T. Apr. 23, 2018 at 76-77).

Defense counsel also elicited testimony that the serial number on the firearm had not been obliterated, going to whether the defendant had intent to use it criminally. (Id. at 25-26). Defense counsel further brought out that during a recorded telephone conversation between the defendant and one of his customers, there was no animosity and no mention of the gun. (Id. at 29). Defense counsel's cross examination of a police officer revealed that no gun was found in defendant's car in a previous search of defendant's vehicle. (Id. at 117).

At the conclusion of the prosecution's case, the defense moved for a judgement of acquittal on the firearms charge arguing that the government had not presented evidence defendant needed or used the firearm in furtherance of his drug trafficking. (Doc. 106, N.T. Apr. 24, 2018 at 34). The court denied the motion. (Id. at 36). The defendant proceeded to present his witnesses. These witnesses testified as to the defendant's intent with regard to the handgun. They indicated that the purpose of defendant carrying the firearm was as protection in relation to his employment in the financial services/insurance industry. (Id. at 37-38). Additionally, defendant testified on his own behalf. The majority of his testimony went to the circumstances of obtaining the firearm and why he kept it. (Id. at 68-96). He stated the firearm was a wedding party gift and he used it for protection in his financial services job and that it was not connected to his heroin trafficking. (Id. at 67-68, 76, 82-84, 88-92, 96).

10

During the closing argument, defense counsel argued that the government had failed to establish defendant knowingly carried a firearm in relation to drug trafficking or that he knowingly possessed a firearm in furtherance of drug trafficking. (Doc. 137, Transcript of Closings and Jury Charge, Apr. 24, 2018 at 23). Counsel stated: "The burden is on these prosecutors to prove guilt beyond a reasonable doubt. And as to Count 4 in this indictment, their case drips with doubt. It drips with doubt." (Id. at 22). Defense counsel then detailed the evidence which created this doubt. For example, he emphasized that witnesses testified that defendant had the gun for protection at his employment. (Id. at 24). Additionally, he discussed the factors that they should consider in determining if the gun was used in furtherance of a drug offense. (Id. at 27-29).

Thus, the record indicates that defense counsel performed effectively in presenting its case that defendant did not have the required criminal intent to be found guilty of Count IV. Accordingly, defendant has not met the first factor of the Strickland test, and his motion will be denied.

### B. Prejudice

Even if defendant had established deficient performance on behalf of his counsel, he has not met the second factor of the Strickland test, that is, prejudice. To satisfy the second factor of the Strickland test, "the defendant must show that the deficient performance prejudiced the defense" by demonstrating that

"counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. In other words, "the party claiming ineffective assistance 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Campbell v. Burris, 515 F.3d 172, 184 (3d Cir. 2008) (quoting Strickland, 466 U.S. at 694).

Here, no prejudice could have occurred because the court's jury instructions thoroughly provided the law regarding the government's burden to prove its case beyond a reasonable doubt. (Doc. 137, N.T. Closings and Charge, Apr. 24, 2018, at 39-40). The court read the statutes which the government charged the defendant with violating, including Count 4. (Id. at 45).   The court fully instructed the jury on Count IV. (Id. at 54-58). In part, the court specifically charged as follows: "the government must prove that Lombardo knowingly possessed the firearm described in the indictment. This means that Lombardo possessed the firearm purposely and voluntarily and not by accident or mistake. It also means that he knew the object was a firearm. And defining in furtherance of – Possession of, in furtherance of, means for the purpose of assisting in promoting, accomplishing, advancing or achieving the goal or objective of the drug trafficking charges asserted in Count 2 and 3. Mere possession of a firearm – mere possession of a firearm at the scene is not enough to find possession in furtherance of a drug

12

trafficking crime. The firearm's presence may be coincidental or entirely unrelated to the underlying crime." (Id. at 56).

The court then provided several non-exhaustive factors that the jury could consider in determining whether possession of the firearm furthered a drug trafficking crime, including, the type of criminal activity being conducted, accessibility of the firearm, the type of firearm, whether it was stolen, whether the firearm was possessed legally or illegally, whether it was loaded and the time and circumstances under which the firearm was found. (Id. at 56-57).

Thus, even if defendant had established deficient performance, the court fully instructed the jury on the law and the burden the government had to meet for the jury to find the defendant guilty. Thus, defendant cannot establish prejudice.

Defendant's reply to the government's opposition brief asks the court for an evidentiary hearing on his motion. (Doc. 144, Def.'s Reply Br. at 2). An evidentiary hearing should be held "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. §2255(b). Here, the records of the case conclusively establish that defendant is not entitled to relief. Therefore, the request for a hearing is denied.

### IV. Conclusion

The defendant has not established ineffectiveness of trial counsel. Contrary to the defendant's position, defense counsel fully informed the jury of the intent

13

needed to find defendant guilty of Count 4. Counsel addressed this issue in opening statements, with the trial's witnesses, and in closing arguments. Defendant's argument lacks merit. Even if counsel had performed deficiently, defendant would not have been prejudiced because the court fully instructed the jury on the burden of proof and elements of the firearms charge. Accordingly, the motion to vacate filed pursuant to 28 U.S.C. §2255 will be denied. Additionally, the court will also decline to issue a certificate of appealability. A certificate of appealability shall not issue unless "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). Defendant has not made such a showing. An appropriate order follows.


*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: April 17, 2020**
15-286-01