**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | | **3:15-CR-286** |
| | **:** | |
| **v.** | | |
| | **:** | **(JUDGE MANNION)** |
| **SAMUEL LOMBARDO,** | **:** | |
| **Defendant** | **:** | |

## MEMORANDUM

## I.    BACKGROUND

On April 28, 2020, defendant Samuel Lombardo, an inmate at FPC-Schuylkill, Minersville, Pennsylvania, filed, *pro se*, a Motion for Compassionate Release and request for Immediate Release to Home Confinement pursuant to the CARES Act, based on the COVID-19 pandemic. (Doc. 147). Defendant initially stated that he notified the prison administration of his request but they allegedly advised him that "no decisions are being made regarding [these requests.]" Thus, he alleged that his "administrative remedies have already been exhausted." Defendant also asserted that he qualifies for release under the Act since he is a "first time non-violent offender and [has] no victims", since he has served 18 months of his sentence, since he has had no disciplinary actions filed against him, and since his "pattern [assessment] resulted in a minimum security level and recidivism." Defendant further alleges that his medical conditions of high

1

blood pressure, pre-diabetes, a stricture of his esophagus, and a hiatal hernia, "can complicate the COVID-19 virus if [he] contract[s] it." Defendant listed his prescribed medications for his conditions.

Further, defendant did not allege in his motion that there are any positive cases of COVID-19 of any inmate or staff at FCI-Schuylkill, including the camp where he is confined.

As such, defendant requests the court, "based on the enormous risk posed by the COVID-19 pandemic exacerbated by the [confines] of prison and limited access to acute medical care", to order the Bureau of Prisons ("BOP") to release him from prison "to serve the remainder of his sentence on home confinement" with his wife in Pittston, Luzerne County, Pennsylvania.[1]

In liberally construing defendant's motion, the court also finds that it is brought as a motion for compassionate release pursuant to 18 U.S.C. §3582(c)(1)(A). In fact, in his supplement, defendant confirms that his motion is filed under this statute. (Doc. 152).

---

[1] The court notes that in Luzerne County, where Lombardo wishes to be placed on home confinement with his wife, as of June 18, 2020, there were 2,841 positive COVID-19 cases reported and 169 deaths. Thus, as the government points out in its June 11, 2020 supplement, (Doc. 151), Lombardo is requesting to "leave FPC Schuylkill, a facility with no reported cases of COVID-19, to reside in Pittston, [PA], an area with significant level of COVID-19 infection." See https://www.health.pa.gov/topics/disease/coronavirus/Pages/Cases.aspx

On May 20, 2020, the court directed the government to file a response to Lombardo's motion. (Doc. 148).

On May 27, 2020, the government filed its response in opposition to Lombardo's motion. (Doc. 149). In its response, (Doc. 149 at 2), the government stated, in part, that "[a]ccording to information received from FPC Schuylkill, Lombardo did not submit a request to the prison warden for compassionate release until May 11, 2020; several weeks after filing the instant motion", and that "FPC Schuylkill advised that, as of [May 27, 2020], Lombardo's request is awaiting decision by the warden, leaving him in the midst of the administrative process."

Thus, on June 10, 2020, the court issued an Order directing the government to advise the court whether the Warden has responded to defendant's request and if so, to submit a copy of the response as well as a copy of defendant's request for compassionate release he submitted to the Warden. (Doc. 150).

On June 11, 2020, the government filed its supplemental response stating that Lombardo submitted his request to Warden Scott Finley on May 11, 2020, and that the Warden denied Lombardo's request to be placed on home confinement on June 2, 2020. (Doc. 151). The government also pointed out that Lombardo "has not yet served 50% or more of his sentence for heroin trafficking and possessing a firearm in furtherance of his drug trafficking." The government attached to its supplement Lombardo's request to the Warden as well as the Warden's response. (Docs. 151-1 & 151-2).

On June 18, 2020, defendant filed a supplement arguing that he has exhausted his administrative remedies. He attached copies of the Warden's June 2, 2020 Response to his May 11, 2020 Request to Staff as well as the Warden's June 10, 2020 Response to his June 9, 2020 Inmate Request for Administrative Remedy in which he appealed the denial of his request for compassionate release to home confinement due to the COVID-19 pandemic. (Doc. 152 at 4-6). Defendant also attached copies of his BOP medical records which he indicates confirm his stated medical conditions.

Lombardo incorrectly contends that the Warden's responses denying his requests indicate that he has exhausted his administrative remedies.

Specifically, in his May 11, 2020 Request to Staff, Lombardo stated that "[d]ue to the recent COVID-19 pandemic and changes made by the CARES Act I believe I qualify for immediate release to home confinement", and that his "health issues" "can be exacerbated by contracting the Corona virus." In his timely June 2, 2020 response to Lombardo's request, Warden Finley pointed out that FCP Schuylkill did not have any confirmed staff or inmate cases of COVID-19 and that the "conditions of [his] release [to Pittston] present a significantly higher risk of contracting COVID-19 than [his] current confinement at [F]CP Schuylkill." Significantly, after the Warden denied Lombardo's request, he advised Lombardo that "[i]f you are not satisfied with this response to your request, you may commence an appeal of this decision via the administrative remedy process by submitting your

4

concerns on the appropriate [BP-9] form within 20 days of receipt of this response."

In the Warden's June 10, 2020 response to defendant's June 9, 2020 appeal, he stated that a fear of potential exposure to or possible contracting COVID-19 do not warrant defendant's early release from his sentence, noting that FCI Schuylkill did not have any confirmed cases of staff or inmates compared to Pittston's "significant level of COVID-19 infection." The Warden also pointed out that defendant has not served 50% or more of his sentence. Finally, the Warden advised defendant that "[i]f you are not satisfied with this response and wish to appeal, you may do so within 20 calendar days of the date of this response by submitting a BP[10] to the [BOP] Regional Director [in Philadelphia]."

To the extent Lombardo requests the court to direct the BOP to release him from prison to home confinement, or to amend his sentence to allow him to serve the remainder of his prison term in home confinement, due to COVID-19, his filing is a motion for compassionate release under 18 U.S.C. §3582(c)(1)(A)(i), and it will be dismissed without prejudice for lack of jurisdiction due to his failure to exhaust his BOP administrative remedies.

To the extent Lombardo seeks the court to order the BOP to find him eligible for immediate home confinement designation under the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. 116-136, §12003, the court does not have authority to grant his request for relief and order the BOP to release him to home confinement.

## II.    DISCUSSION[2]

In his present motion, (Doc. 147), defendant Lombardo requests the court order the BOP to immediately transfer him from FPC-Schuylkill to home confinement and requests the court allow him to serve the remainder of his 72-month prison sentence in home confinement due to his fear of the COVID-19 pandemic. Lombardo's filing is pursuant to the CARES Act and it is a motion for compassionate release pursuant to 18 U.S.C. §3582(c)(1)(A). Lombardo states that he is in danger of contracting the virus due to the confines of the prison in which the CDC's guidelines are not practiced and alleges that if he contracts the virus he will be at risk of suffering severe complications due to his medical conditions. Based on these allegations, Lombardo appears to contend that there exists extraordinary and compelling circumstances warranting his release from prison to home confinement.[3]

---

[2]Since the court recently stated the background of this case in its April 17, 2020 Memorandum denying Lombardo's motion under 28 U.S.C. §2255, (Doc. 145), it shall not be repeated herein. Suffice to say that Lombardo is currently serving an aggregate 72-month prison sentence, after a jury found him guilty of drug trafficking offenses, in violation of 21 U.S.C. §841(a)(1), and a possessing a firearm in relation to drug trafficking offenses, in violation of 18 U.S.C. §924(c). The court also sentenced defendant to 3 years supervised release. (Doc. 114).

[3]Since the government included in its response the safety measures implemented by the BOP in response to the COVID-19 virus, (Doc. 149 at 3-5), and since this court is well-aware of all of the safety measures implemented by the BOP, *see* Cordaro, 2020 WL 2084960, and since many of the measures are found on the BOP's website, they are not repeated. *See also* BOP website: www.bop.gov/coronavirus/index.jsp. The court has also

In its response, (Doc. 149), the government initially argues that Lombardo's motion for compassionate release from prison to home confinement under 18 U.S.C. §3582(c)(1)(A), should be dismissed for lack of jurisdiction because he has not exhausted his administrative remedies. The government also states that the exhaustion requirement is "mandatory" and that since Lombardo filed his instant motion with the court before exhausting his administrative remedies with the BOP, this court is "without jurisdiction to entertain the motion." (citing Untied States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020)). The government also noted, (Doc. 149 at 4 n. 1), that "[a]ccording to FCP Schuylkill personnel, Lombardo does not have any medical limitations that affect his ability to work any and all of the work details offered in the BOP", and that "[Lombardo] does not claim to have contracted COVID-19, or to have had contact with anyone who contracted COVID-19."[4]

_____

reviewed the May 26, 2020 Memorandum from Ken Hyle, BOP Assistant Director/General Counsel to the Honorable Ricardo S. Martinez, Chair of the Judicial Conference Criminal Law Committee, regarding updated information from the Bureau of Prisons with respect to its response to the COVID-19 pandemic and about revised screening procedures for new inmates being confined in federal prisons to reduce the spread of the virus.

Also, the number of COVID-19 cases in a federal prison can be found at COVID-19 Cases, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/. The government represents that as of May 27, 2020, there were no reported positive COVID-19 inmate cases and no positive staff cases at FCI-Schuylkill. FCI-Schuylkill is not listed on the BOP's website as of June 18, 2020, which the BOP has advised the court signifies that there are no staff or inmates who are COVID-19 positive.

[4]The court reviewed Lombardo's PSR, (Doc. 97), which indicated that he is 55 years old, thus not in the high risk category for COVID-19 based on his age, and that he had occasional joint pain but he reported "satisfactory

After the government filed its initial response, Warden Finley responded to Lombardo's request on June 2, 2020, in a timely manner within the 30-day period, and denied it. (Doc. 151-2). Lombardo's exhibit, (Doc. 152 at 5-6), then indicates that on June 9, 2020 he appealed the denial of his request for compassionate release *via* the initial stage of the BOP's administrative remedy process. The Warden then denied Lombardo's appeal on June 10, 2020, and advised defendant how to appeal his decision. Lombardo has not yet appealed the Warden's response.

Regarding exhaustion in this case, the court must first consider whether Lombardo has exhausted his BOP administrative remedies. As stated, Lombardo received a response from the Warden on June 2, 2020 denying his request for compassionate release, and then a response from the Warden denying his appeal on June 10, 2020. Defendant has not yet appealed the latest response from the Warden. Also, since the Warden timely responded to Lombardo's request, Lombardo cannot directly file an action with the court without exhausting his administrative remedies. Only if the Warden fails to respond to the inmate's request within 30 days, can the inmate file his motion for compassionate release with the court without exhausting his BOP administrative remedies.

---

physical health." Lombardo's BOP medical records he submitted were also reviewed. (Doc. 152 at 7-15). They do not indicate that Lombardo has any recognized conditions considered as comorbidity with respect to COVID-19.

As the court in <u>United States v. Smith</u>, 2020 WL 2063417, *2 (N.D.Oh. April 29, 2020), explained:

> Smith has also failed to fully exhaust his administrative remedies with respect to his original motion. Because the Warden explicitly denied his 2019 request for compassionate release, Smith needed to exhaust by appealing the Warden's decision. *See* 28 C.F.R. §542.15(a); *see also* B.O.P. Program Statement 5050.50 §571.63 (citing the Administrative Remedy Program appellate procedure as the proper method of administratively appealing a denied §3582(c)(1)(A)); *see, e.g.*, <u>United States v. Brummett</u>, 2020 WL 1492763, at *1-2 (E.D.Ky. Mar. 27, 2020)(denying request for compassionate release due to COVID-19 for failure to exhaust because inmate did not appeal warden's denial of his request for a reduction in sentence).

Recently, in <u>United States v. Early</u>, 2020 WL 2572276, *3 (W.D.Pa. May 21, 2020), the court considered a similar exhaustion issue as presented in the instant case, and stated: "Warden Williams responded to Defendant's request [for compassionate Release/Reduction in Sentence] within 30 days of receipt. Consequently, Defendant is obligated to complete the administrative appeal process. Therefore, this Court finds that Defendant has failed to exhaust his administrative remedies." The court in <u>Early</u>, *id.*, also stated that the court may not waive the exhaustion requirement and that "exhaustion of [defendant's] administrative remedies is mandatory." (citing <u>United States v. Raia</u>, 954 F.3d 594 (3d Cir. 2020)). "In <u>Raia</u>, the Court of Appeals emphasized the BOP's statutory role and extensive efforts to control the spread of Covid-19, and held that the 'exhaustion requirement takes on added – and critical – importance.'" *Id.* (quoting <u>Raia</u>, 954 F.3d at 597). "The

BOP is in the best position to consider the myriad of factors necessary in rendering a decision." *Id.*

Also, even if Lombardo, just like the defendant in the <u>Early</u> case, *id*. at *2, was to contend that he has exhausted his administrative remedies because the Warden formally denied his request within the 30-day time frame provided for in the First Step Act, he would not be correct.

The court in <u>Early</u>, *id*. at *3, explained:

> Defendant's reading of the statute is misplaced. Courts have interpreted the statue to mean that an inmate must fully exhaust his administrative remedies unless his or her warden does not respond to the inmate's request within 30 days. *See* <u>United States v. Nance</u>, 2020 WL 114195, at *2 (W.D. Va. Jan. 10, 2020). In other words, a defendant must wait to file a motion with this Court until either his administrative request related to compassionate release is denied and he fully exhausts all administrative rights to appeal or thirty days have passed from the date he made the application *with no response from the warden*, whichever occurs first. *Id.* ("[C]ases indicate that this statutory exhaustion requirement has been interpreted to excuse full exhaustion of administrative remedies only if 30 days have elapsed without any response by the Bureau of Prisons to the inmate's request."), citing, <u>United States v. Bolino</u>, 2020 WL 32461, at *1 (E.D.N.Y. Jan. 2, 2020). *See also*, <u>United States v. Bevans-Silva</u>, 2020 WL 2475079 (S.D. Ga. May 13, 2020); <u>United States v. Samuels</u>, 2020 WL 2499545, at *2 (W.D. La. May 13, 2020); <u>United States v. McCallister</u>, 2020 WL 1940741, at *2 (W.D. La. April 21, 2020); <u>United States v. Rodriguez</u>, —— F.Supp.3d ——, ——, 2020 WL 1627331, at *3 (E.D. Pa. Apr. 1, 2020) ("Under the First Step Act ... it is possible for inmates to file compassionate-release motions—under the 30-day lapse provision—when their warden never responds to their request for relief."); <u>United States v. Mattingley</u>, 2020 WL 974874, at *3 (W.D. Va. Feb. 28, 2020); <u>United States v. Keith</u>, 2019 WL 6617403, at *1 (W.D. Okla. Dec. 5, 2019)(To exhaust administrative remedies, a defendant "first submits his request to BOP and either (1) complete the administrative appeal

process, if BOP denies his request; or (2) wait 30 days from BOP's receipt of his request to deem its lack of response a denial of his request."). [District Court criminal nos. omitted].

In United States v. Solomon, 2020 WL 2768897, *3 (W.D.Pa. May 28, 2020), the court stated, "[c]ourts have interpreted [18 U.S.C. §3582(c)(1)(A)] to mean that an inmate must fully exhaust his administrative remedies unless his or her warden does not respond to the inmate's request within 30 days." (citing Early, 2020 WL 2572276, at *3). This court concurs with Early and Solomon, as well as the cases to which they cite, and finds that Lombardo must wait to file a motion with the court after he fully exhausts all administrative rights to appeal the Warden's denial of his administrative request for compassionate release since the Warden responded to his request within 30 days from the date he submitted his request. *See id.* (citing Early, 2020 WL 2572276, at *3).   *See also* United States v. Martin, 2020 WL 3065302, *3 (S.D.Miss. June 9, 2020) (Court "agree[d] with those courts interpreting the 'lapse' provision [i.e., the language in 18 U.S.C. §3582(c)(1)(A) providing that the court can consider a motion for compassionate release after the "lapse of 30 days from the receipt of such a request by the warden"] as having a futility component: it applies only when the BOP has failed to respond to a compassionate-release request within 30 days of its submission. If an inmate's request is denied before the lapse of 30 days, then he must fully exhaust administrative remedies before the Court may consider his motion to modify his sentence under the statute.") (citing

Early, 2020 WL 2572276, at *3; United States v. Ng Lap Seng, ---F.Supp.3d---, 2020 WL 2301202, *5-6 (S.D.N.Y. May 8, 2020)). In Ng Lap Seng, 2020 WL 2301202, *5-6, the Court held that section 3582(c)'s "exhaustion requirement is clearly statutory and therefore mandatory" and, did not agree with courts that have "interpreted 'lapse of 30 days from the receipt of such a request by the warden,' 18 U.S.C. §3582(c)(1)(A), to mean that the statute's exhaustion requirement is satisfied merely upon the passage of 30 days from the date the warden receives a defendant's request that the BOP file a compassionate release motion on its behalf, regardless of whether the BOP has failed to take action on the request." The court stated that this "first reading would also—in many cases—render the statute's provision regarding full exhaustion of administrative remedies meaningless, as defendants like Ng would forego appealing a warden's denial of their compassionate release request if the 30-day period was nearing an end." Id. The court in Ng Lap Seng then "agree[d] with the courts that have interpreted Section 3582(c)(1)(A)'s 'lapse' language as requiring the BOP's failure to respond to a prisoner's request for a compassionate release motion within thirty days, giving the court discretion to hear a compassionate release motion if the BOP has failed to timely consider the request." Id. at *6. The court also explained that "given the BOP's regulations regarding its deadlines for considering compassionate release requests, it is unlikely in the normal case that a defendant could exhaust his administrative remedies within 30 days", and that "[i]f Congress desired to so fundamentally change

12

the compassionate release process by circumventing the BOP's full administrative review, Congress could have used clearer language, as it did elsewhere in the First Step Act." *Id.* The court then concluded that "[b]ecause I read Section 3582(c)(1)(A)'s 'lapse of 30 days' language to require the BOP's failure to respond to a compassionate release request within thirty days of its submission to the BOP, I conclude that Ng must fully exhaust the BOP appeals process to satisfy Section 3582(c)(1)(A)'s exhaustion requirement", and that the defendant "has not yet satisfied this exhaustion requirement due to his failure to fully appeal the warden's denial of his request." *Id.* at *7. The court in <u>Ng Lap Seng</u> also indicated that if Section 3582(c)(1)(A)'s exhaustion requirement is not jurisdictional, then the government can waive the affirmative defense of exhaustion. Conversely, if Section 3582(c)(1)(A)'s exhaustion requirement is jurisdictional, as this court finds it is based on <u>Raia</u>, then the government cannot waive the exhaustion issue and the court must be satisfied that it has jurisdiction to consider the merits of a defendant's motion for compassionate release. In fact, as indicated, the government states that exhaustion of administrative remedies is mandatory under 18 U.S.C. §3582(c)(1), and since Lombardo has not exhausted his remedies with respect to the Warden's June 10, 2020 denial of his request, this court "does not have jurisdiction to grant Lombardo's request for compassionate release." (Doc. 149 at 2).

This court concurs with the court in <u>Ng Lap Seng</u> as well as the courts cited therein, *id.* at *6 (string citations omitted), which have held that "the

exception to exhaustion in section 3582(c)(1)(A) 'provides that Defendants can bypass exhaustion altogether if the warden fails to act on an administrative application for compassionate release within 30 days.'" However, if the warden responds to defendant's request within 30 days, then defendant must exhaust all of his BOP administrative rights to appeal the warden's decision as provided by BOP Program Statement No. 5050.50, and "the same exhaustion procedure for routine administrative grievances (i.e., the use of forms BP-9 through BP-11) applies to requests for compassionate release." *Id.* at *7 (citing 28 C.F.R. § 542.15(a)). The court notes that since the court in <u>Ng Lap Seng</u>, *id.* at *7, detailed all of the required administrative remedies an inmate must pursue before filing a motion for compassionate release with the court, as well as citations to the applicable websites, they are not repeated herein. *See also* <u>United States v. Martin</u>, 2020 WL 3065302 (S.D.Miss. June 9, 2020) ("For the reasons articulated by the court in <u>Ng Lap Seng</u>, this Court agrees with those courts interpreting the 'lapse' provision as having a futility component: it applies only when the BOP has failed to respond to a compassionate-release request within 30 days of its submission. If an inmate's request is denied before the lapse of 30 days, then he must fully exhaust administrative remedies before the Court may consider his motion to modify his sentence under the statute. In this case, Martin says his request was initially denied within the 30-day window, and he does not demonstrate that he fully exhausted that denial. In this

14

procedural posture, the Court 'may not modify [his] term of imprisonment.'") (citing 18 U.S.C. §3582(c)(1)(A)).

This court also interprets Section 3582(c)(1)(A)'s "'lapse of 30 days'" language to require the BOP's failure to respond to a compassionate release request within thirty days of its submission to the BOP", Ng Lap Seng, *id.* at *7, and it finds that defendant Lombardo "must fully exhaust the BOP appeals process to satisfy Section 3582(c)(1)(A)'s exhaustion requirement" since the Warden did respond to his request within 30 days. Here, the court finds that defendant has not yet satisfied the exhaustion requirement since he has failed to fully appeal the Warden's June 2, 2020 denial of his May 11, 2020 request. In short, simply because defendant submitted his compassionate release request more than 30 days before he filed his instant motion, does not establish that the 30-day requirement for exhaustion of administrative remedies has been met.

Also, to the extent that Lombardo is deemed as attempting to argue futility based on his above stated allegations in his motion, and requests the court to consider the substantive merits of his motion, the court concurs with the government that the "statutory command [regarding the exhaustion requirement] such as that presented in §3582(c)(1)(A)" may not be ignored by the court and that there is no futility exception. (Doc. 149 at 3). Further, as the government points out, (Id.), "Lombardo's exercise of the administrative process, following his instant motion [i.e., his May 11, 2020 request to the Warden], undercuts any claimed futility."

15

Additionally, the court cannot waive Section 3582(c)(1)(A)'s exhaustion requirement because it is jurisdictional. *See* <u>United States v. Raia</u>, 954 F.3d 594, 597 (3d Cir. 2020) (Third Circuit held that courts cannot consider a request for compassionate release under the First Step Act until the inmate has exhausted his BOP administrative remedies.); <u>United States v. Davila</u>, 2020 WL 2839860, *2 (W.D.Pa. June 1, 2020) ("The exhaustion requirement that applies in this case is explicitly set forth in §3582(c)(1)(A), and, therefore, cannot be excused."); <u>United States v. Pitt</u>, 2020 WL 2098272, *2 (M.D.Pa. May 1, 2020) ("The court cannot overlook [defendant's] failure to exhaust his remedies, as the Third Circuit recently emphasized the need for 'strict adherence' to the exhaustion requirement in the wake of the COVID-19 pandemic.") (citing <u>Raia</u>, 954 F.3d at 597).

Further, just because Lombardo submitted his request for compassionate release to Warden Finley on May 11, 2020, and 30 days has now passed since the warden's receipt of the request, Section 3582(c)(1)(A)'s "lapse of 30 days" language has not been satisfied, permitting judicial consideration of his motion. The court rejects the interpretation of the language "lapse of 30 days from the receipt of such a request by the warden, 18 U.S.C. §3582(c)(1)(A), to mean that the statute's exhaustion requirement is satisfied merely upon the passage of 30 days from the date the warden receives a defendant's request that the BOP file a compassionate release motion on its behalf, regardless of whether the BOP has failed to take action on the request." <u>Ng Lap Seng</u> at *5. As discussed,

16

this court has interpreted the "lapse" language differently and concurs with Early and Lg Lap Seng, as well as the other courts cited in these cases, and finds that "Defendants can [only] bypass exhaustion altogether if the warden fails to act on an administrative application for compassionate release within 30 days." *Id.* at \*6 (citations omitted). But if the warden responds to the inmate's request for compassionate release within 30 days of receiving it, as in the present case, then the inmate must exhaust all of his BOP administrative remedies before seeking judicial relief. Indeed, Warden Finley advised Lombardo that he could appeal the denial of his request through the BOP administrative remedy process by filing a BP-10 form with the Northeast Regional Office. As such, the court's "interpretation [] foreclose[s] judicial consideration of [Lombardo's] motion until [he] 'fully exhausted all administrative rights to appeal [the] failure of the Bureau of Prisons to bring a motion on [his] behalf ....'" *Id.*

In the present case, just as in Early, 2020 WL 2572276, at \*3, and in Lg Lap Seng, "Warden [Finley] responded to [Lombardo's] [May 11, 2020] request within 30 days of receipt [i.e., on June 2, 2020]" and timely responded to Lombardo's appeal on June 10, 2020. (Doc. 151-2; Doc. 152 at 5-6). Thus, Lombardo "is obligated to complete the administrative appeal process", and the court finds that "[he] has failed to exhaust his administrative remedies." *Id.* It is of no moment that more than 30 days have passed since the Warden received Lombardo's request, since this court has not agreed with the courts which have found that the "lapse of 30 days from

the receipt of such a request by the warden," 18 U.S.C. §3582(c)(1)(A), "to mean that the statute's exhaustion requirement is satisfied merely upon the passage of 30 days from the date the warden receives a defendant's request [for] compassionate release [], regardless of whether the BOP has [responded to the request.]" Ng Lap Seng at *5.

Thus, it is clear that Lombardo has not satisfied the requirement under 18 U.S.C. §3582(c)(1)(A), since the Warden did respond to his request for compassionate release within 30 days and since defendant has not yet appealed the Warden's June 10, 2020 response *via* the BOP administrative remedy process.

Since Warden Finley timely denied defendant's request and appeal, defendant was required to file an appeal with the BOP Regional Director, within 20 calendar days of his receipt of the Warden's response, as Finely advised defendant. 28 C.F.R. §542.15(a). Then if the Regional Director denied his appeal, defendant was required to appeal that decision to the BOP General Counsel, within 30 calendar days from the date the Regional Director signed the response. *Id.* The appeal to the General Counsel is the final administrative appeal in the process. *Id. See also* Early, 2020 WL 2572276, *2 (citing 28 C.F.R. §542.15(a)).

The court further finds that even if the exceptions to the exhaustion requirement applied in this case, and they do not since "exhaustion of [defendant's] administrative remedies is mandatory", Early, 2020 WL 2572276, *3, none exist especially since, as noted, there are presently no

18

positive cases of the COVID-19 virus reported at FCI-Schuylkill as of June 18, 2020, and Lombardo does not claim to have come into contact with anyone who has the virus.

As such, Lombardo's motion for compassionate release from prison to home confinement under, 18 U.S.C. §3582(c)(1)(A)(i), as amended by the First Step Act ("FSA"), Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), will be dismissed without prejudice for failure to exhaust all of his BOP administrative remedies. *See* Cordaro, 2020 WL 2084960, *5; Early, 2020 WL 2572276, *4. *See also* United States v. Raia, 954 F.3d 594 (3d Cir. April 2, 2020); United States v. Smith, 2020 WL 2063417, *2 (N.D.Oh. April 29, 2020) (court held that defendant failed to fully exhaust his administrative remedies with respect to his motion for compassionate release "[b]ecause the Warden explicitly denied his [] request, [defendant] needed to exhaust by appealing the Warden's decision." (citing 28 C.F.R. §542.15(a); B.O.P. Program Statement 5050.50 §571.63 (citing the Administrative Remedy Program appellate procedure as the proper method of administratively appealing a denied §3582(c)(1)(A)); United States v. Brummett, 2020 WL 1492763, at *1-2 (E.D. Ky. Mar. 27, 2020) (denying request for compassionate release due to COVID-19 for failure to exhaust because inmate did not appeal warden's denial of his request for a reduction in sentence)); United States v. Edwards, 2020 WL 1987288 (M.D.Tn. April 27, 2020) (Court denied motion for compassionate release without prejudice until the exhaustion requirement of 18 U.S.C. §3582(c)(1)(A(i) is satisfied);

19

United States v. Early, 2020 WL 2572276 (W.D.Pa. May 21, 2020).

Secondly, the court cannot yet determine if Lombardo has demonstrated that "extraordinary and compelling reasons" due to the COVID-19 pandemic warrant a reduction of his sentence, since he has not exhausted his administrative remedies. *See* United States v. Zukerman, --- F.Supp.3d---, 2020 WL 1659880, *2 (S.D.N.Y. April 3, 2020) ("in order to be entitled to relief under 18 U.S.C. §3582(c)(1)(A)(i), [defendant] must both meet the exhaustion requirement and demonstrate that 'extraordinary and compelling reasons' warrant a reduction of [her] sentence.") (emphasis added); Raia, 954 F.3d at 597 ("The First Step Act empowers criminal defendants to request compassionate release for 'extraordinary and compelling reasons'" after the defendant exhausts administrative remedies with the BOP.) (citing 18 U.S.C §3582(c)(1)(A)(i)). The Third Circuit in Raia, *id.*, also held that defendant's failure to comply with §3582(c)(1)(A)'s exhaustion requirement "presents a glaring roadblock foreclosing compassionate release at this point."

As the Third Circuit in Raia, 954 F.3d at 597, explained, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." (citation omitted). *See also* Feiling, 2020 WL 1821457, *5 ("the Court agree[d] with the Third Circuit [in Raia] and the district courts cited [in its decision] and will join them in holding

that the mere existence of COVID-19 among the prison population and an inmate's susceptibility to it do not justify waiver of the administrative exhaustion requirement under §3582(c)(1)(A).") (string citations omitted of several cases finding that since defendant failed to exhaust the administrative remedies with BOP, the Court does not possess authority to grant relief under §3582(c)(1)(A)(i), even if based on COVID-19, and that §3582(c)(1)(A) provided no authority to waive the exhaustion requirement); Smith, *supra* (same); Edwards, 2020 WL 1987288, *10 n.6 (court noted that the Third Circuit's conclusion in Raia that the exhaustion requirement was "non-waivable" and that the failure to exhaust administrative remedies forecloses compassionate release was not "mere 'dicta'"). The court in Early, 2020 WL 2572276, *3, also recently stated that the court may not waive the exhaustion requirement and that "exhaustion of [defendant's] administrative remedies is mandatory." (citing United States v. Raia, 954 F.3d 594 (3d Cir. 2020)).

Moreover, the Third Circuit in Raia, 954 F.3d at 597, stated, "[g]iven BOP's shared desire for a safe and healthy prison environment, we conclude that strict compliance with §3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance." *See also* Feiling, 2020 WL 1821457, *7 ("Because Defendant has failed to exhaust administrative remedies under §3582(c)(1)(A), the Court lacks authority to grant a sentence modification under that provision."); United States v. Soto, 2020 WL 1875147, *1 (D.Co. April 15, 2020) ("18 U.S.C. §3582(c)(1)(A) imposes a requirement on a

defendant requesting compassionate release to exhaust all administrative rights before seeking such relief.") (citation omitted); United States v. Boyles, 2020 WL 1819887, *2 (D.KS. April 10, 2020) (the court held that since defendant did not exhaust his BOP administrative remedies as required, "it [did] not decide whether he has established that there are 'extraordinary and compelling reasons' why he should be released."); United States v. Wright, 2020 WL 1976828 (W.D.La. April 24, 2020) (court did not need to address whether inmate demonstrated extraordinary and compelling reasons to warrant his release to home confinement under the provisions of the compassionate release statute "due to the grave dangers presented by COVID-19" since inmate did not exhaust his administrative remedies under 18 U.S.C. §3852(c)(1)(A), which is mandatory and "the Court has no power to waive the exhaustion requirement."); United States v. Edwards, 2020 WL 1987288 (MD.Tn. April 27, 2020) (after an extensive review of recent cases filed in light to the COVID-19 pandemic, the court concluded that "[it] cannot consider the Motion [for compassionate release] until the exhaustion requirement of 18 U.S.C. §3582(c)(1)(A(i) is satisfied", and denied the Motion without prejudice to refiled it once exhaustion was completed); United States v. Johnson, ---F.3d---, 2020 WL 1663360, *6 (D.Md. April 3, 2020) (Court held that since prisoner seeking relief under §3582(c)(1)(A) did not fully exhaust his administrative remedies, it lacked jurisdiction over motion and would not consider whether prisoner presented "extraordinary and

22

compelling reasons" warranting his release from prison until exhaustion was completed).

Additionally, insofar as Lombardo relies in his motion on the CARES Act, which was signed into law on March 27, 2020, as the basis for his release to home confinement, such reliance is misplaced. Any such request by Lombardo under the CARES Act will be denied since the court has no authority to direct the BOP to place him in home confinement and the determination of which defendant qualifies for home confinement under the CARES Act is with the BOP Director.

As the court in United States v. Sawicz, 2020 WL 1815851, *1 (E.D.N.Y. April 10, 2020), recently explained:

> [The] CARES Act expanded the maximum amount of time that a prisoner may spend in home confinement: "if the Attorney General finds that emergency conditions will materially affect the functioning of the [BOP], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement ...." CARES Act §12003(b), Pub. L. No. 116-136, 134 Stat. 281 (2020). Attorney General William Barr made the requisite "finding that emergency conditions are materially affecting the functioning of the Bureau of Prisons" on April 3, 2020, thereby triggering the BOP's authority to expand the amount of time that a prisoner may spend in home confinement.

The determination of which inmates qualify for home confinement under the CARES Act is with the BOP Director. *See* United States v. Doshi, 2020 WL 1527186, *1 (E.D.Mi. March 31, 2020) (The CARES Act "temporarily permits the Attorney General to 'lengthen the maximum amount of time for which [it] is authorized to place a prisoner in home confinement'

under §3624(c)(2)", and "the authority to make this determination is squarely allocated to the Attorney General, under whose authority is the Bureau of Prisons."). In fact, the CARES Act "does not mandate home confinement for any class of inmate." <u>Valenta v. Ortiz</u>, 2020 WL 1814825, *1 (D.N.J. April 9, 2020).

Under the CARES Act "Congress sought to address the spread of the coronavirus in prisons by permitting BOP to expand the use of home confinement under [Section 602 of the First Step Act] §3624(c)(2)." <u>Furando</u>, 2020 WL 1922357, *2 (citing Pub. L. No. 116-36, §12003(b)(2)). "Upon direction of the Attorney General, Section 12003(b)(2) of the CARES Act temporarily suspends the limitation of home confinement to the shorter of 10 percent of the inmate's sentence or 6 months." *Id.*

Thus, the CARES Act provides that if the Attorney General finds that emergency conditions will materially affect the functioning of the BOP, as he did on April 3, 2020,[5] the BOP Director may increase the maximum amount of time that a prisoner may spend in home confinement under the first sentence of 18 U.S.C. §3624(c)(2). *Id.* at *3; <u>Cruz</u>, 2020 WL 1904476, *4.

As such, "the jurisdiction of [a home confinement] determination [under the CARES Act] is with the Director of the Bureau of Prisons." *Id.*; <u>Cordaro</u>, 2020 WL 2084960, *6.

---

[5] *See* <u>Furando</u>, 2020 WL 1922357, *2-3 (court summarized Barr's Memoranda).

## III.   CONCLUSION

Insofar as Lombardo's Motion is for Compassionate Release or for Reduction of Sentence and for Immediate Release to Home Confinement related to the COVID-19 pandemic, **(Doc. 147)**, it will be **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction due to his failure to exhaust his BOP administrative remedies under §3582(c)(1)(A)(i). Insofar as Lombardo requests this court to compel the BOP to find that he is eligible for home confinement designation under the CARES Act, the court will **DISMISS** it since the authority to make this determination lies with the BOP Director and not the court. An appropriate order will follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: August 3, 2020**
15-286-02